**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

☆FILED☆

2020 MAY -6  PM 1:09

U.S. ...

GREGORY SCLAFANI,

        Plaintiff,

v.

ACTING DIRECTOR OF THE
BUREAU OF PRISONS THOMAS R.
KANE; METROPOLITAN
DETENTION CENTER WARDEN
HERMAN QUAY III; and MDC UNIT
MANAGER SPIVEY,

20 cv 463 (EK) (✓/M)

**Jury Trial Demanded (Yes ✓ (No __ )**

        Defendants.

## FIRST AMENDED COMPLAINT

Pro se plaintiff Gregory Sclafani[1] hereby alleges as follows for their Complaint:

1.    This is an action alleging violations of Plaintiff's Constitutional rights by Defendant federal officers of the Bureau of Prisons employed at the Metropolitan Detention Center in Brooklyn, New York.

### PARTIES

2.    Plaintiff resides within the Eastern District of New York.

3.    Defendant Thomas R. Kane was the Acting Director of the Bureau of Prisons during the relevant time period.  Defendant was acting under color of federal law in furtherance of his employment as described in this Amended Complaint.  Defendant is sued in his individual capacity.

---

[1] A draft of this pleading was prepared with the help of an attorney with the City Bar Justice Center's Pro Se Legal Assistance Project.

4.    Defendant Warden Herman Quay III is a citizen and resident of the State of New York, employed by the Bureau of Prisons ("BOP"). Defendant was acting under color of federal law in furtherance of his employment as described in this Amended Complaint. Defendant is sued in his individual capacity.

5.    Defendant Unit Manager Spivey is a citizen and resident of the State of New York, employed by the Bureau of Prisons ("BOP"). Defendant was acting under color of federal law in furtherance of her employment as described in this Amended Complaint. Defendant is sued in her individual capacity.

## JURISDICTION AND VENUE

6.    This action is brought pursuant *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and the Fifth Amendment to the U.S. Constitution.

7.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

8.    Venue is proper in this district because the actions underlying the Amended Complaint occurred in this district.

## STATEMENT OF FACTS

9.    On or about July 29, 2016, Plaintiff was sentenced to 30 months' incarceration after he plead guilty to a non-violent financial crime.

10.   The sentencing court ordered that Plaintiff remain incarcerated at the Metropolitan Detention Center ("MDC"), a federal jail and prison in Brooklyn, New York, for the remainder of his sentence.

11.   Plaintiff's statutory release date following his 30-month sentence was January 17, 2017.

12.   Because Plaintiff had already spent approximately twenty-six months incarcerated at the MDC prior to imposition of his sentence, Plaintiff had approximately three-and-a-half months remaining on his 30-month term following sentencing.

13.   In or about 2007, Congress passed the Second Chance Act, 18 U.S.C. § 3624, to allow the Director of BOP to move certain, non-violent federal prisoners from prisons to pre-release custody such as residential re-entry programs and/or home confinement.

14.   The Second Chance Act provides that the "Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility." 18 U.S.C. § 3624(c)(1).

15.   The Second Chance Act also grants the Director of the Bureau of Prisons authority "to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." 18 U.S.C. § 3624(c)(2).

16.   During the time period relevant to this Amended Complaint, Defendant Thomas R. Kane was the Acting Director of the BOP and had authority under the Second Chance Act as specified in 18 U.S.C. § 3624(c)(1)-(2).

3

17.  Under the Second Chance Act, Plaintiff was eligible for transfer to pre-release home confinement on or about October 19, 2016 (to serve the final 10% of his 30-month sentence).

18.  Plaintiff met all other criteria for eligibility for pre-release to home confinement, which he purposefully completed prior to October 19, 2016.

19.  Following his sentencing on July 29, 2016, Plaintiff was returned to the physical portion of the MDC where pre-trial detainees are incarcerated (the "jail portion of MDC").

20.  Due to Defendants' negligence, oversight, or slowness, Plaintiff was not timely moved to the physical portion of the MDC where post-sentencing defendants are incarcerated (the "prison portion of MDC").

21.  On or about October 12, 2016, about two and a half months after being sentenced, Defendant Quay moved Plaintiff to the prison portion of MDC to serve the remainder of his sentence.

22.  Plaintiff had, around this time, already spoken to BOP Supervisor Boden and BOP Counselor Bennett about Plaintiff's eligibility for pre-release transfer to home confinement of which both Boden and Bennett were aware.

23.  Immediately upon Plaintiff's transfer to the prison portion of MDC, Plaintiff communicated to Defendant Spivey that he was very soon eligible for a pre-release transfer under the Second Chance Act.

24.  Specifically, Plaintiff notified Defendant Spivey that he was eligible for transfer to pre-release home confinement on or about October 19, 2016.

25.  Defendant Spivey sought an official computation of Plaintiff's sentence from BOP, which she received on or about October 25, 2016.

4

26.     In an email to Plaintiff dated October 30, 2016, Defendant Spivey wrote that she needed
        at least 120 days to process the paperwork necessary to transfer Plaintiff to pre-release
        confinement, and that as of October 25, 2016 (when Defendant Spivey received
        Plaintiff's sentence computation) not enough time remained before Plaintiff's final
        release date.

27.     Defendant Spivey knew that Plaintiff was eligible for transfer to pre-release transfer to
        home confinement at the time that she received Plaintiff's sentence computation on
        October 25, 2016.

28.     On or about November 1, 2016, however, Defendant Spivey refused to process Plaintiff's
        paperwork necessary for BOP to transfer Plaintiff from MDC to pre-release home
        confinement.

29.     Defendant Spivey's stated rationale for refusing to process Plaintiff's paperwork was that
        she had an "insufficient amount of time" to do so.

30.     Defendant Spivey memorialized her rationale in a memo dated November 7, 2016.

31.     Defendant Spivey's November 7, 2016 memo also confirmed that Plaintiff had otherwise
        met the eligibility criteria for pre-release transfer to home confinement, including
        completion of class studies, a medical and psychological assessment, and drug testing.

32.     Plaintiff complained to Defendant Spivey's supervisor, MDC Unit Manager Childress,
        about Defendant Spivey's refusal to process his pre-release paperwork.

33.     Childress refused to override Defendant Spivey's decision, also citing lack of sufficient
        time.

34.     Plaintiff appealed Defendant Spivey's refusal to process his pre-release paperwork by
        following the administrative process within BOP.

35.   Specifically, Plaintiff appealed Defendant Spivey's refusal to Correctional Officer Bennett on or about November 17, 2016.

36.   Correctional Officer Bennett referred Plaintiff's appeal back to Defendant Spivey, who affirmed her prior refusal.

37.   Plaintiff, on or about December 4, 2016, again administratively appealed Defendant Spivey's refusal to process his pre-release paperwork.

38.   Defendant Warden Quay, on or about December 20, 2016, denied Plaintiff's appeal, citing insufficient time to process Plaintiff's pre-release paperwork.

39.   Defendant Warden Quay did not disagree with Plaintiff that Plaintiff was eligible for pre-release transfer to home confinement.

40.   At the time that Defendant Warden Quay denied Plaintiff's appeal, he knew that Plaintiff was eligible for pre-release transfer to home confinement, and that Plaintiff had been eligible for almost two months.

41.   Nonetheless, Defendant Warden Quay denied Plaintiff's appeal, effectively causing Plaintiff to remain incarcerated within MDC for the entirety of his sentence, despite Plaintiff's eligibility for pre-release under the Second Chance Act.

42.   Plaintiff exhausted the administrative appeal process within BOP for challenging Defendant Spivey's refusal to process Plaintiff's pre-release transfer paperwork.

43.   As Director of the BOP, Defendant Kane was responsible for authorizing the pre-release transfer of eligible detainees, such as Plaintiff, to home confinement in accordance with the Second Chance Act.

44.   Defendant Kane denied Plaintiff his liberty right to pre-release transfer to home confinement under the Second Chance Act.

6

45.   Plaintiff served the entirety of his statutory 30-month sentence at MDC and was released on January 17, 2017.

46.   Defendants never transferred Plaintiff to pre-release confinement such as a residential re-entry program or home confinement, despite Plaintiff's eligibility and repeated pleas for transfer.

47.   Each day that Plaintiff spent incarcerated at MDC beyond the date that he was eligible for pre-release caused Plaintiff mental anguish, anxiety, and psychological suffering because he could not understand the basis for his continued incarceration at MDC and he felt hopeless, powerless, and uncertain of his future release.

48.   Because Plaintiff was not released to home confinement, he was also unable to begin court-ordered psychiatric treatment until after his release from MDC. Plaintiff lost approximately three months of psychiatric care during which he would otherwise have begun treatment to address his psychological health.

49.   Defendants' deprivation of Plaintiff's access to psychiatric care was directly caused by their refusal to transfer Plaintiff to pre-release and caused Plaintiff additional psychological suffering and harm.

**FIRST CAUSE OF ACTION**
**FIFTH AMENDMENT: VIOLATION OF DUE PROCESS**

50.   Plaintiff realleges the foregoing paragraphs as if fully incorporated here.

51.   The Second Chance Act, 18 U.S.C. § 3624, created a liberty interest protected by the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

52.   Plaintiff had a protected liberty interest in not being confined in the MDC once he met the criteria for pre-release to a re-entry program and/or home confinement.

53.   Defendants deprived Plaintiff of his liberty interest without affording him due process of law.

54.   Plaintiff's continued incarceration beyond the date that he was eligible for release to a re-entry program and/or home confinement caused an atypical and substantial hardship on Plaintiff.

55.   Defendants' deprivation caused Plaintiff severe psychological suffering for each day that Plaintiff remained incarcerated at the MDC beyond the date when he was eligible for pre-release to a re-entry program and/or home confinement.

56.   Defendants' deprivation also caused Plaintiff psychological harm because it postponed the date on which Plaintiff was able to begin court-ordered psychiatric treatment as part of the term of his Supervised Release.

57.   Plaintiff lacks a statutory cause of action that would provide Plaintiff with a meaningful remedy for Defendants' violation of his constitutional right.

WHEREFORE, Plaintiff demands judgment against Defendants:

a)   Compensatory and punitive damages for his First Cause of Action in an amount to be determined at trial;

b)   Declaratory judgment that Defendants willfully violated Plaintiff's rights under the U.S. Constitution and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, as alleged herein;

c)   Injunctive relief as may be appropriate to prevent any future violations of federal law;

d)   And any such further relief as this Court deems appropriate.

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

8

(2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated:
Bayville, NY

Gregory Sclafani
Plaintiff, *pro se*

9